**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**Randy WINTERS, Defendant
and Appellant.**

No. 15354.

Supreme Court of South Dakota.

Argued April 23, 1987.

Decided July 8, 1987.

Robert E. Mayer, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Steven L. Jorgensen, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

Defendant Randy Winters (Winters) appeals from his conviction of first-degree rape by the trial court. We affirm.

Winters was tried and convicted of first-degree rape stemming from an incident that occurred at Wall Lake, South Dakota, on August 8, 1985. On the evening of August 8, 1985, the victim attended a party at a house in Sioux Falls, South Dakota. After expressing an interest in obtaining a ride on a Harley-Davidson motorcycle, she was introduced to Winters, who owned such a motorcyle. The victim agreed to go with Winters for a ride and the pair eventually stopped at Wall Lake. Winters and the victim walked down near the lakeshore, sat down and smoked a cigarette, after which, according to the victim, Winters attempted to kiss her. She testified that she resisted Winter's advances but to no avail. The victim subsequently testified that Winters threatened to drown her in the lake unless she submitted to sexual intercourse with him.

After the incident, the victim was presented with the choice between walking back to Sioux Falls or accepting a ride with Winters. She accepted a ride with Winters and was dropped off near the party. At the time she was dropped off, the victim claims that Winters told her to keep quiet or that somebody would come out of the dark and slit her throat. Several witnesses testified that the victim entered the house in an hysterical state and was unable to relate what had occurred for nearly one-half hour. After the victim told of the attack, police officers were called and the victim was interviewed and taken to a local hospital. A swab taken from the victim indicated the presence of seminal fluid which was later matched to the blood characteristics of Winters.

At trial, Winters relied solely on an alibi defense. State originally contended that the offense was committed at 12:45 a.m. on the 9th day of August, 1985, but informed the defense on December 9, 1985, that the offense in fact occurred between 11:45 p.m. and 12:30 a.m. Partially as a result of this disclosure, the trial was continued at Winters' request. Winters does not deny meeting the victim or giving her a ride on his motorcycle. He denies, however, being at Wall Lake and raping the victim.

There is no affirmative showing in the record that Winters was ever arraigned on the charge of first-degree rape. At the

outset of the trial, however, the trial court stated:

> Mr. Winters, at the time of your arraignment in this matter the Court advised you that you had a right to a speedy, public trial by court or jury. And that in the event that you desired to have a jury trial on this matter before you could be found guilty each of the twelve jurors would have to be convinced beyond a reasonable doubt, that is, the jury verdict must be unanimous. Do you understand those rights.

Winters thereafter indicated that he did understand his rights. A short time later, the court asked Winters' attorney if he was willing to waive the formal reading of the indictment to which the attorney replied that he was. The court then went on to state: "The record may reflect that the defendant has pled not guilty to the Indictment, which places in issue and requires the State to prove each and every essential element of the Indictment beyond a reasonable doubt." These statements by the trial court are the only indication that Winters was arraigned and pled to the charge. In addition, Winters and his attorney both claim that they did not receive a copy of the indictment.

Winters raises four issues on appeal: (1) Did the failure of the state to arraign the defendant constitute grounds for new trial or an arrest of judgment? (2) Did the trial court err in denying defendant's motion for a continuance as to allow him to have a scientific analysis performed by the expert witness appointed by the court? (3) Was the defendant entitled to a new trial based on the fact that defendant's expert witness' findings varied from the State's expert witness? (4) Was the finding of guilty by the court sustained by the evidence inasmuch as the state failed to prove beyond a reasonable doubt that the defendant committed an offense at 12:45 a.m. on August 9, 1985, as stated in their notice of demand for alibi defense?

While we believe that failure to arraign a defendant is a gross oversight, we do not agree with Winters when he contends that it requires automatic reversal. Failure to arraign is not per se a constitutional violation.

> Due process of law, this court has held, does not require the state to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution.

*Garland v. Washington*, 232 U.S. 642, 645, 34 S.Ct. 456, 457, 58 L.Ed. 772, 775 (1914). We specifically adopted the *Garland* test in *City of Rapid City v. Albertus*, 310 N.W.2d 167 (S.D.1981). We have no doubt that Winters had sufficient notice of the accusation and had an adequate opportunity to defend himself. Although he may not have been arraigned, Winters knew months prior to trial that he was charged with the rape of the victim. On the 26th of November, 1985, State served upon defense counsel a notice of demand for alibi defense. On the 2nd day of December, 1985, State made a motion to withdraw a blood sample from Winters which stated, *inter alia*, that Winters was indicted for rape in the first-degree and that the alleged incident took place at Wall Lake, South Dakota. Furthermore, a motion hearing was held in this case on the 3rd day of December, 1985. The trial was not conducted until February 19, 1986. A brief review of the trial transcript provides proof that Winters had an adequate opportunity to defend himself. Winters was represented by an experienced criminal trial lawyer and called eleven witnesses in his defense. Once again, we adopt the language of the *Garland* court. "Tried by this test it cannot for a moment be maintained that the want of formal arraignment deprived the accused of any substantial right, or in any wise changed the course of trial to his disadvantage." *Garland*, 232 U.S. at 645, 34 S.Ct. at 457, 58 L.Ed. at 775. Furthermore, we concede that failure to arraign is a violation of statute but we have held in a long line of cases that failure to show arraignment and/or plea does not, in and of itself, require reversal. *State v. Dale*, 66 S.D. 418, 284 N.W. 770 (1939); *State v. Ham*, 21 S.D. 598, 114 N.W. 713 (1908); *State v. Bunker*, 7 S.D. 639, 65 N.W. 33 (1895); *State v.*

*Reddington,* 7 S.D. 368, 64 N.W. 170 (1895). The facts in this case do not persuade us to deviate from our established precedent.

Winters' next two issues on appeal can be combined for disposition. We do not believe that Winters was entitled to a continuance nor do we believe that he is entitled to a new trial. We disagree with Winters when he states that the defendant's expert witness' findings varied from the State's expert witness' findings. Winters claims that State's expert witness testified that only fourteen percent of the caucasian population could have contributed the semen sample taken from the victim. This contention is erroneous. State's expert witness actually testified that all of Winters' blood characteristics, including subtype, were shared by only fourteen percent of the caucasian population. However, since Winters and the victim shared a common subtype, State's expert could not and did not state that the semen sample could have come from only fourteen percent of the population. On cross-examination at trial State's expert specifically stated: "I am not saying that the semen donor ... was 14 percent of the population, that's correct." The expert witness on whose affidavit Winters relies specifically stated that he agreed with the test results obtained by State's witness. He did point out that the testimony of State's expert in the motion hearing relating to the fourteen percent figure might have been misleading. Any possible misconception, however, was cleared up by State's expert's later testimony which is quoted above. Furthermore, the trial court specifically addressed this possible misconception in the post-trial motion hearing. The court stated: "What he is saying the finder of fact could have misinterpreted what he is saying at [sic] 14 percent. I didn't misinterpret it. I was the fact-finder.... I understood what the assumption was in getting at the 14 percent."

Winters' final issue on appeal contains little merit. In his brief, he contends "it is the State's burden to prove beyond a reasonable doubt that the Defendant committed the alleged crime *at 12:45 a.m. on August 9, 1985* at Wall Lake, South Dakota." (Emphasis added.) He cites no authority in support of this contention. Furthermore, State notified Winters that the time of the offense was actually between 11:30 p.m. and 12:15 a.m. Winters goes on at length in his brief claiming that it was physically impossible for Winters to have been at Wall Lake at 12:45 a.m. taking into account the testimony of the witnesses. In light of State's timely notice of the change of time period, we find no merit in this contention.

We affirm the trial court on all issues.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

This author has written specially in *State v. King,* 400 N.W.2d 878, 881 (S.D.1987) (Henderson, J., dissenting) (guilty plea), and *Logan v. Solem,* 406 N.W.2d 714, 720 (S.D. 1987) (Henderson, J., dissenting) (*nolo contendere* plea), concerning *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and *Nachtigall v. Erickson,* 85 S.D. 122, 178 N.W.2d 198 (1970). There, I was concerned with a question of a free and voluntary plea and the rights which must be accorded to a defendant entering a plea. Here, however, we have a different situation: There is no plea but, rather, a full-blown trial.

Perhaps it is not reversible, per se, to hold no arraignment; but it is dangerous procedure and precedent to disregard the state statute requiring arraignment. *See* SDCL 23A–7–1.[1] Shall we journey down

---

1. SDCL 23A–7–1 provides:

   *An arraignment shall be conducted in open court,* except that an arraignment for a Class 2 misdemeanor may be conducted in chambers, and *shall consist of reading the indictment, information or complaint,* as is applicable, *to the defendant or stating to him the substance of the charge and calling on him to plead thereto.*

   A defendant must be informed that if the name in the indictment, information or complaint is not his true name, he must then declare his true name or be proceeded against by the name given in the indictment, information or

the road, by way of conclusion, on a further erosion of due process of law? I say no.

Additionally, in South Dakota, we have a constitutional provision which requires that the defendant be furnished with a copy of the nature and cause of the accusation against him. S.D. Const. art. VI, § 7. Have we come to a point in the criminal procedures of this state where we no longer formally arraign and furnish a copy of the Information? One might peruse our words in *Honomichl v. State,* 333 N.W.2d 797, 798 (S.D.1983): "Without a formal and sufficient indictment or information, a court does not acquire subject matter jurisdiction and thus an accused may not be punished for a crime." Defendant, from what I can glean of the record, did not see the Indictment. Yet, he was required to proceed to trial. How can a court acquire jurisdiction without a plea? In *Honomichl* (which is not, conceptually, dissimilar from this case), we expressed: "Subject matter jurisdiction cannot be conferred by agreement, consent, or waiver." *Honomichl,* 333 N.W.2d at 799.

Where was the plea in this case? There is no record of it existing—only a statement by the trial judge "that the defendant has pled not guilty to the Indictment...." However, at the defendant's hearing on his motion in arrest of judgment, the trial judge expressed on the record: "I cannot find where the defendant was arraigned or where he was called upon to plead." *See* Post–Trial Motion Hearing Transcript 16 (May 2, 1986). There has to be a reason—a necessity—for a formal arraignment and a plea to a major crime; without it, the parties are proceeding in a legal never-never land. An indictment or information must set forth elements of a crime and places the burden on the State to prove the elements; a defendant has the right to defend against these elements knowing precisely what he must meet. Were this not so, he could become ensnared in future accusations on precisely the same set of facts. At the end of the State's case, a defendant may move for a directed verdict of acquittal on the grounds that the elements pleaded have not been established by the proofs. Defendant and his counsel must have a document before them to know precisely what the State is attempting to prove and be able to refer to it, from time to time, as the trial progresses. It very well could develop, at a later date, that the defendant might be required to assert double jeopardy as a bar to another prosecution.[2] At that time, he must be able to point out to the second court, essentially as follows: Here is what I was charged with and here is what I was acquitted of (or convicted of). In essence, he and his counsel must be able to glue onto something and the information or the indictment is the firmament upon which a mental and legal attachment can be made.

There are authorities which disagree with this Court's decision. Held: Judgment null and void where no plea asked for and no plea of guilty entered, *State v. Wester,* 204 N.W.2d 109 (N.D.1973). *See also State v. Berger,* 235 N.W.2d 254 (N.D. 1975). Held: Conviction reversed because no trial could be held "on the merits in a criminal case until the Defendant has pleaded not guilty or this plea has been entered for him by the Court," *Chesnut v. State,* 35 Ala.App. 376, 47 So.2d 248, 248 (Ala.Ct.App.1950). *See also Strong v. State,* 47 Ala.App. 238, 252 So.2d 659 (Ala. Crim.App.1971), reversing a murder in the first degree conviction where defendant sentenced to death because no plea had been entered by the defendant or the court. Held: Conviction reversed where the record on appeal did not disclose the plea of

complaint. If he gives no other name, the court may proceed accordingly. If he alleges that another name is his true name, he shall be proceeded against pursuant to § 23A–6–20. *He shall be given a copy of the indictment, information or complaint,* as is applicable, *before he is called upon to plead.* (Emphasis supplied.)

2. For three protections that the double jeopardy clause offers, as enunciated by the United States Supreme Court, see *State v. Grey Owl,* 316 N.W.2d 801, 803 (S.D.1982), and *State v. Feiok,* 364 N.W.2d 536, 542 (S.D.1985) (Henderson, J., dissenting). These protections were later referred to in *State v. Biays,* 402 N.W.2d 697, 699–700 (S.D.1987).

the defendant before being placed on trial, even though defendant had demanded a jury trial and indicated they were ready for trial, *People v. Snively,* 11 Ill.App.2d 579, 138 N.E.2d 112 (1956). Held: Where defense counsel moved to quash information and motion was denied, when defendant was called upon to plea (and did not), and both the State and defendant presented their respective cases to the jury and jury convicted defendant, that conviction would be reversed, *Lumsden v. State,* 384 S.W.2d 143 (Tex.Crim.App.1964). In reversing, the Texas Court expressed: "It is well settled in this state that a plea must be entered in every criminal case, and if no plea is entered the trial is a nullity, since there is no issue for the jury or the Court." *Id.,* 384 S.W.2d at 144. Collateral support for this ruling may be found in *Willis v. State,* 389 S.W.2d 464 (Tex.Crim.App.1965) and *People v. Sturdy,* 235 Cal.App.2d 306, 45 Cal. Rptr. 203 (1965). What is there to try unless a matter is in issue?

This defendant may be retried, upon a reversal of this conviction, and it is not a matter of a subjective thought of "turning a criminal lose on a technicality," for, without question, his constitutional right to have a copy of the indictment was violated. His statutory right to have a copy of that with which he was accused, was likewise violated. Any man or woman brought to the bar of justice is entitled to know the crime with which he or she is charged; it is fundamental law. *See generally* 2 C. Torcia, *Wharton's Criminal Procedure* § 336, at 217–20 (12th ed. 1975). We, in South Dakota, have the right, in the event that the majority position can fasten itself onto a 1914 United States Supreme Court decision,[3] to extend a broader protection to the citizens of this state. *State v. Opperman,*

247 N.W.2d 673 (S.D.1976). *See* C. Whitebread, *Criminal Procedure* § 29.01, at 592–97 (1980). If the majority decision is telling the lawyers and judges and people of this state that we no longer must call upon a man to be formally arraigned and to plea to a charge and be given a copy of an indictment or an information, but, rather, to adopt a procedure with some type of an informal, loose, flaccid fashion, I dissent for the reason that it is a destruction of the safeguards heretofore established by the fathers of our state constitution and the legislators who passed the act which is set forth *in extenso* above. Appellant, for the record, was sentenced to fifteen years in the State Penitentiary. Under my view, this conviction/sentence would be reversed, and, for the posterity of criminal procedure in this state, appellant would be returned to the Bar of Justice for arraignment, plea, and trial.

---

**3.** In *City of Rapid City v. Albertus,* 310 N.W.2d 167 (S.D.1981), this Court utilized the language in *Garland v. Washington,* 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914), to hold that a failure to arraign was not by itself reversible error. *Albertus* involved a speeding violation and prosecution was under a Uniform Complaint–Summons for speeding. Albertus received an $11 fine and costs. She complained, in her appeal, that she was never formally arraigned. However, Albertus was never prosecuted under either an information or indictment. Most im-

portantly, she was not charged with a serious crime nor a major felony. Therefore, the *Albertus* decision is inapposite. *See* SDCL 23A–7–1, which is set forth in footnote 1, *supra.* South Dakota has a special procedure for speeding tickets instituted by the arresting officer, at the scene, which provides that the speeder may enter a plea of guilty on the ticket that he is handed and waive an appearance before a magistrate. To liken the *Albertus* procedure to a first-degree rape procedure is unrealistic.