STATE of South Dakota, Plaintiff
and Appellee.

v.

Thomas F. MYERS, Defendant
and Appellant.

No. 16985.

Supreme Court of South Dakota.

Considered on Briefs Sept. 21, 1990.

Decided Dec. 19, 1990.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre (Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief), for plaintiff and appellee.

Craig M. Johnson, Rapid City, for defendant and appellant.

MILLER, Chief Justice.

Thomas F. Myers (Myers) appeals from his judgment of conviction for driving while under the influence of alcohol.

### FACTS

On the morning of August 28, 1989, Gerald Shelton (Shelton), manager of a convenience gas station in Rapid City, observed a pickup truck pull up in front of the gas pumps. The driver, Myers, got out of the truck, apparently noticed that the pumps were on the wrong side of the truck, and then returned to the truck. Shelton noticed that Myers then got in the truck and slumped over the steering wheel. Shelton went out to the truck, removed the keys and called the police.

James D. Schultz (Schultz), a Rapid City police officer, answered the police call and discovered Myers still slumped over the steering wheel. Schultz stirred Myers and asked him to step out of the vehicle. As Myers stepped out, he fell into Schultz's arms. Schultz smelled alcohol. Myers refused to perform field sobriety tests. Schultz placed Myers under arrest and informed him of the implied consent provision, but Myers still refused to perform the sobriety tests. Schultz took Myers to the Pennington County Jail. Schultz testified that Myers was verbally abusive, belligerent, uncooperative and verbally threatening.

A computer check showed no prior DWI convictions but showed that Myers' driver's license had been revoked. Schultz believed that the computer was incorrect and he contacted the Pennington County State's Attorney's office. A secretary from that office informed him that Myers had two

prior DWI convictions. Schultz discussed Myers' attitude with the jailer, Sergeant Merle Thompson. Thompson spoke with Myers and determined that Myers was pugnacious and uncooperative. Thompson and Schultz decided that Myers should be placed in physical restraints.

Schultz asked Myers to submit to a blood draw. Myers refused and stated "Hell no, you ain't taking nothing." When the medical technologist arrived, Myers again refused to submit to the blood draw. Schultz decided that Myers should be restrained during the blood draw for the safety of Myers and everyone involved. Five people assisted in restraining Myers. The blood draw was successful and Myers was not injured. The medical technologist testified that she could tell that Myers was resisting despite the restraints. Myers objected to the admission of the blood test results. The trial court allowed admission of the blood test results.

During the jury trial, the prosecuting attorney asked Officer Schultz: "Officer Schultz, did he say anything else in regard to him drinking on that day?" Officer Schultz responded: "I believe that Mr. Myers told me later, after I told him he was being charged with DWI third, that he did indicate that when he got out of jail, he says, 'You can send me to jail, but when I get out, I'll do the same damn thing.' "

Defense counsel immediately objected on grounds of relevancy. The trial judge sustained the objection and also granted defense counsel's motion to strike the officer's response. The trial judge admonished the jury to disregard the officer's statement. Defendant then moved for a mistrial. The trial judge denied the motion for mistrial after noting that he had been looking directly at the jury at the time of the response and had observed no visible indication that the statement had any effect on the jury.

## ISSUES

### WAS THE INVOLUNTARY BLOOD DRAW AN UNREASONABLE SEARCH AND SEIZURE?

■ This Court recently addressed the blood draw/search and seizure issue in a similar case. *State v. Lanier*, 452 N.W.2d 144 (S.D.1990). In that case, Lanier became argumentative and questioned the medical technologist's qualifications. The medical technologist gave the defendant his certification card. Lanier threw the card on the ground and refused to submit to the blood draw. When the medical technologist attempted to draw blood, Lanier resisted. Lanier tried to kick one of the jail personnel and was then restrained by five or six officers while blood was drawn.

In the present case, officers testified that Myers was verbally abusive and threatening and was adamant in his refusal to submit to the blood draw. Myers was asked several times if he would allow the blood draw and Myers consistently said he would not. When the medical technologist arrived the officers restrained Myers in a chair with one officer holding each leg, one officer on the right arm and two officers on the left arm, from which the blood was drawn. No attempt to draw blood was made prior to the restraining Myers. However, Myers repeatedly refused to submit to the draw and indicated that he would resist.

Although Myers had not yet physically assailed a police officer, his refusal to submit to the blood draw was unequivocal. In *Lanier*, we noted that "we do not depart from the general rule that such force must be reasonable under the facts and circumstances of the individual case." *Id.* at 147. Under these facts, it was not unreasonable for the police officers to forego a futile and potentially dangerous, unrestrained blood draw.

### DID TRIAL JUDGE CLEARLY ABUSE HIS DISCRETION BY DENYING THE MOTION FOR MISTRIAL?

Trial courts have considerable discretion not only in granting or denying a mistrial (*State v. Closs*, 366 N.W.2d 138, 143 (S.D.1985)) but also in determining the prejudicial effect of a witness' statements. *State v. Michalek*, 407 N.W.2d 815, 818 (S.D.1987). Only when this discretion is clearly abused will this court

overturn the trial court's decision. *Id.; State v. Farley*, 290 N.W.2d 491, 494 (S.D.1980).

To justify the granting of a mistrial, an actual showing of prejudice must exist. *Closs*, 366 N.W.2d at 143; *State v. Clabaugh*, 346 N.W.2d 448, 451 (S.D.1984). Prejudicial error for purposes of determining whether error constitutes grounds for mistrial is error "which in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." *Michalek*, 407 N.W.2d at 818 (*citing State v. Dokken* [,] 385 N.W.2d 493, 498 (S.D.1986)).

*State v. Blalack*, 434 N.W.2d 55 (S.D.1988).

■ Officer Schultz made an unresponsive answer which mentioned the fact that it was Myers' third DWI. The trial judge sustained Myers' objection, agreed to strike the answer, and admonished the jury to disregard the statement. The trial judge denied the motion for mistrial and noted several justifications: the answer was unresponsive and unintentional on the part of Officer Schultz; the trial judge was looking directly at the jury when the statement was made and he observed no effect on the jurors; the prosecuting attorney had not planned the event and could not anticipate it; evidence of Myers' guilt was overwhelming; all other actions requested by Myers were granted in an attempt to alleviate any effect of the statement.

In light of the trial judge's reasoning, it was not a clear abuse of discretion to deny the motion for mistrial. Affirmed.

MORGAN, WUEST, and SABERS, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part; dissenting in part).

Under this set of facts, a jury could justifiably find Myers guilty of DUI. His driving, under his intoxicated condition, was egregious. As the State expresses on page nine of its brief, "there was overwhelming evidence of defendant's guilt." * I strongly agree. This quote is advocacy by the State to substantiate its position that the trial court properly denied defendant's request for mistrial. I concur in that aspect of the majority decision which holds that the trial court did not abuse its discretion in denying defendant's motion for mistrial. Officer Schultz' singular statement did not convict defendant; rather, it was the testimony of his driving to the gas station and, later on, slumping over the wheel—dead drunk. As Justice Dunn wrote for this Court in *State v. Farley*, 290 N.W.2d 491, 494: "The trial judge has wide discretion in determining the prejudicial effect of a witness' statements, and it is only when this discretion is clearly abused that this Court will overturn a decision." (*citing State v. Winckler*, 260 N.W.2d 356 (S.D.1977)).

Notwithstanding my views aforesaid, this conviction should be set aside and remanded to the trial court for a fair, new trial. My view is not because (obviously) I tolerate his conduct but, rather, due to the trial court's failure to suppress the results of the blood test admitted into evidence. In *State v. Lanier*, 452 N.W.2d 144, 147 (S.D.1990), I set forth my views concerning the constitutionality of SDCL 32–23–10, which statute is not mentioned in this majority opinion. In *Lanier* and in *State v. Heinrich*, 449 N.W.2d 25 (S.D.1989), I took the position that said statute did not meet constitutional muster (and my position has not changed). It is the same statute which is used as a vehicle to handcuff, leg chain, and physically hold down (with 5 grown men) this defendant to forcibly extract blood from his body. Rather than to encumber this writing, I ask the reader to peruse my former writing on this same subject in *Lanier*. Suffice it to say, our state constitution is different than the national constitution. It expresses: No person shall be compelled in any criminal case

---

* So—the legal mind ponders: Why was he placed in leg chains, plus handcuffed, with a police officer and 4 jailers restraining him to take a blood sample? State had an overwhelming amount of proof at its command without the unreasonable use of force.

to give *evidence* against himself...." Art. VI, § IX, State Constitution of South Dakota. Art. V of the United States Constitution is worded: "No person ... shall be compelled in any criminal case to be a *witness* against himself...." Therefore, a law passed to force a South Dakota citizen (in handcuffs—in chains—with 5 men holding him) "to give *evidence* against himself" is against the direct dictates of our state constitution. Furthermore, as I pointed out in the *Lanier* dissent, as well as *Heinrich*, valid state convictions should not be decided by a law enforcement officer on the highway or at a police station by a jailer. Rather, a judge should decide this in a court of law. Ah, the validity of convictions, where does the legal community ordinarily have these decided? If you took any lawyer and his client out on a highway or to a jail and had a detective or law enforcement officer make a decision as to the validity of a conviction, what would the lawyer say to you?—In all probability, he would say: "Go to h___. I want to go before a Judge with my client!" But this statute militates against judicial decisions; it empowers law enforcement to make the determination. I continue to embrace our state constitution, mentally hug it, and treasure it's values. And with hope. Hope that it will become a foundation for future good judgments. In the year 2040 (hypothetically), what will this Court's legacy be for the constitutional scholars of that day?

Now, to my last point (faced with a deterioration, via this decision, of past precedent on "unreasonable force").

In *Lanier* the majority opinion essentially held that the blood extracted from him was vital because of "exigent circumstances." And that the "use of force is permissible to obtain virtually the only direct evidence available of proof of alcoholic consumption." Now, weigh that rationale against the facts before us in this case. Facts: (1) Myers slumped over the wheel—passed out; (2) Myers falls into the arms of the officer—dead drunk; (3) Officer smells alcohol all about Myers' presence; (4) Myers' speech was slurred; and (5) Myers' pupils were dilated. In a nutshell, Myers was falling down drunk. Now, students,

where are the "exigent circumstances" for the leg irons, handcuffs, five grown men to pin down the legs and arms? In dear old *Schmerber*, drawn upon in my dissent in *Lanier*, I quoted:

> It bears repeating however, that we reach this judgment only on the facts of the present record. That today we hold that the Constitution does not forbid the State's *minor intrusion* into an individual's body under stringently limited conditions and in no way indicates that it permits more substantial intrusions, or intrusions under other conditions. *Schmerber v. California*, 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1967). (emphasis supplied mine).

Under this set of facts, the blood sample was the fruit of an *unreasonable* search and seizure under the Fourth Amendment to the United States Constitution and violative of Article VI, § IX, of our state constitution. Therefore, its results ought not to be admissible in a criminal prosecution under the exclusionary rule. *State v. Habbena*, 372 N.W.2d 450, 458 (S.D.1985). Was reasonable force used here? No. *Myers did not physically resist.* Reasonableness of the search and seizure is a substantive determination to be made by the trial judge from all of the facts and circumstances. *Ker v. California*, 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). A withdrawal of blood must be examined in light of the reasonableness standard of the Fourth Amendment. *Hammer v. Gross*, 884 F.2d 1200, 1208 (9th Cir.1989).

May evidence be secured at any cost? May zeal of law enforcement be elevated over constitutional mandate? Was the arsenal of force reasonable under the facts of this case? Is it now possible for law enforcement officers in South Dakota to totally ignore the Fourth Amendment to the United States Constitution and the mandate of our State Constitution? It appears to me that whatever force the law enforcement officers of this state use, under any circumstances, will be countenanced for this case, indeed, is the far end of the reasonableness spectrum. *See, People v. Kraft*, 3 Cal.App.3d 890, 84 Cal.Rptr. 280

(1970) for a similar case supporting this dissent. Acts of the law enforcement officials, in the case before us, are condemned per *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Three cheers for the diversity of opinion in the courts of this land; competing thoughts are healthy for the law.

