STATE of South Dakota, Plaintiff and Appellee,

v.

Clifford Guy CLOTHIER, Defendant and Appellant.

No. 14909.

Supreme Court of South Dakota.

Argued Nov. 18, 1985.

Decided Jan. 29, 1986.

Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Timothy J. Becker of Banks & Johnson, Rapid City, for defendant and appellant.

WUEST, Acting Justice.

This is an appeal from a judgment of conviction following a guilty verdict of first-degree manslaughter. We affirm.

On Friday evening, November 16, 1984, Mike Hawkins (Hawkins) and Muriel Riggins (Riggins) met with Cheryl Jackson (Jackson) at the Playgirl Retreat Club in Rapid City, South Dakota. Jackson was forced to close the club and the two were helping her dismantle its stage. Hawkins and Riggins had been drinking beer and smoking marijuana before their arrival at the club, and the threesome had a few beers while there. After approximately an hour, they decided to visit a friend at the Gold Dust Bar in Lead, South Dakota. During the trip to Lead, Hawkins and Riggins shared another marijuana cigarette and each of the three drank another beer. They arrived at the Gold Dust Bar at ap-

proximately 10:00 p.m., and after a round of drinks, Riggins left to sleep in their Jeep, while Hawkins and Jackson remained at the bar until closing time.

The three started on the trip back to Rapid City at closing time, via Highway 385 and Sheridan Lake Road. While en route, however, they decided to stop at the trailer home of Share and Guy Clothier (appellant), to get money for a water pump Hawkins had sold to appellant. At trial, Riggins testified that they also went to the trailer to warn the Clothiers to stay out of their lives, as Riggins believed that Share Clothier had informed local authorities that Riggins was involved in prostitution and that Hawkins was dealing drugs.

They arrived at appellant's trailer at approximately 2:00 a.m. Hawkins and Riggins knocked on the door while Jackson slept in the Jeep. Jim Richards, appellant's brother-in-law, answered and informed the two that appellant and Share Clothier were asleep in the back bedroom. Hawkins and Riggins entered and woke the Clothiers, who came out into the living room. Appellant told Hawkins that he did not have the money owed for the water pump, at which time Riggins confronted Share Clothier with having informed the police that Riggins was a prostitute and Hawkins a drug dealer. A heated argument ensued and, after several minutes, Hawkins and Riggins returned to the Jeep. Riggins was seated in the center of the front seat with Jackson on her right and Hawkins behind the wheel.

Apparently, Hawkins intended to reclaim the water pump from appellant's pickup. Upon discovering that he did not have the tools needed, however, he decided to push the pickup into a nearby creek with the Jeep. Appellant had followed the two out of the trailer, carrying a .25 caliber pistol, which reportedly prompted Hawkins to remark "if you want to pop caps, we can pop caps too." Appellant returned to the trailer, claiming that Hawkins had tried to run over him. Shortly thereafter, appellant heard a crashing sound and, through the bedroom window, he saw his pickup being pushed across a field by the Jeep.

Appellant ran from the trailer and reached the Jeep as Hawkins was pushing the pickup into the creek. Shortly thereafter, the pistol appellant was carrying discharged, striking Hawkins in the left temple, killing him instantly. While the facts are inconclusive as to whether the gun was fired deliberately, appellant claims that as he approached the driver's door, Hawkins tried to open it into him, and the gun discharged accidently when appellant's arm hit the door jam as he attempted to strike Hawkins with the gun handle. Both Riggins and Jackson testified, however, that neither of them saw any arm movements or heard anything hit the Jeep when the gun fired. Furthermore, appellant testified that, before leaving the trailer, he cocked the gun when he pulled the action back to determine that it was loaded.

Riggins testified that after the gun fired killing Hawkins, appellant stated "that's what he gets for messing with my truck." Riggins also testified that Share Clothier began pulling Jackson from the Jeep screaming, "take these dumb bitches up on the hill and slit their throats. I don't need no witnesses." This statement was further substantiated at trial by Jackson.

Appellant and Share Clothier took Jackson and Riggins into the trailer and discussed the incident. While Riggins and Jackson remained in the trailer with Jim Richards, appellant and Share Clothier went to the woods and disposed of Hawkin's body, the gun, and the bloody clothing. They returned to the trailer and a plan was devised to explain Hawkin's disappearance. Thereafter, Jackson and Riggins were driven to Jackson's home in Rapid City and the Clothiers fled to Sheridan, Wyoming, where they were apprehended.

Appellant was tried before a jury and convicted of first-degree manslaughter. He was sentenced to forty-five years in the South Dakota State Penitentiary and he appeals.

Prior to trial, the trial court granted appellant's motion in limine prohibiting the

State from introducing Share Clothier's statement that appellant should take Riggins and Jackson "up on the hill and slit their throats." In compliance with SDCL 19–12–3, the trial court determined that the statement was substantially more prejudicial than probative. The court, however, admonished appellant's counsel not to "open the door" on this issue, stating:

> [I]n granting this motion, I want to warn you that if the issue is broached by you by attacking the credibility of the witnesses to the extent that they were attacked at the Preliminary Hearing, to the effect that they had no cause to be afraid, that their actions are not explainable ·or their credibility is somehow impaired because they weren't in fact in danger, I want to warn you that if you bring that—take that attack, or take that position, you may very well be opening up those remarks and those prior bad acts to show and to explain why those witnesses acted the way they did act after the shooting.

After defense counsel's cross-examination of Jackson, the State moved the court to reconsider its earlier ruling on Share Clothier's statement, contending that defense counsel presented a scenario to the jury which intimated that Jackson and Riggins had no reason to be afraid after the shooting. The trial court agreed and admitted the statement, holding that appellant's cross-examination of Jackson opened up the issue "sufficiently to bring that statement in to balance the scales toward relevancy and against prejudice." The trial court determined that Share Clothier's statement was admissible as either a contemporaneous statement or condition under SDCL 19–16–5, or an excited utterance under SDCL 19–16–6.

█ Appellant contends that the statement in issue was not admissible under the excited utterance exception to the rule against hearsay, SDCL 19–16–6, which states: "A statement *relating* to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, is not excluded by § 19–16–4, even though the declarant is available for trial." (Emphasis added.) Appellant argues that Share Clothier's statement was inadmissible at trial under this exception because it did not "relate" to the shooting of Hawkins. We disagree.

SDCL 19–16–6 is taken verbatim from the Federal Rules of Evidence, Rule 803(2). As stated in Weinstein's Evidence, ¶ 803(2)[01] p. 803–95:

> Rule 803(2) is in accord with Wigmore in not requiring that the statement elucidate or explain the occurence, a condition which was incorporated in the Model Code and perhaps the Uniform Rules. Use of the word "relating" in the federal rule does limit the subject matter of the statement to some degree. The fact that a matter wholly unrelated to the event in question springs to mind through free association does not make the statement about the thought admissible.... If the subject matter of the statement is such as would likely be evoked by the event, the statement should be admitted. This determination cannot be made mechanically without assessing the facts of the particular case.

A review of the facts surrounding this tragic incident show that Share Clothier's statement to the effect that appellant should kill Riggins and Jackson and thereby prevent them from testifying to the shooting was not a statement "wholly unrelated" to the incident, which sprang to mind through "free association." Indeed, the contents of the declaration demonstrate its relation to the shooting, as it manifests Share Clothier's thoughts of self-preservation immediately after she realized what had occurred. As stated in 22A C.J.S. *Criminal Law* § 662(5) p. 673:

> [A]n act done or a declaration made after the happening of the principal fact may be admissible as part of the res gestae where it is ... so intimately interwoven with the principal fact by the surrounding circumstances as to warrant the conclusion that it was made or done under the immediate influence of the principal

transaction or event and is the spontaneous utterance or expression of thoughts created by, and springing out of, the transaction itself. Subsequent conduct and statements are admissible as part of the res gestae where they follow at once after the principal event and serve to characterize it[.]

While we acknowledge that such assessments are to be made on a case-by-case basis, we believe that the statement in issue, when viewed in the context of the surrounding circumstances, was related to the principal event, namely, the death of Michael Hawkins. Moreover, the trial court allowed the admission of this statement after defense counsel, despite the court's warning, put the credibility of Riggins and Jackson into question by intimating that the two girls were on friendly terms with the Clothiers after the shooting incident. The record shows that Share Clothier was screaming when she made the statement and it appears that she was extremely agitated by the incident. Consequently, the two remaining requirements of the statute are satisfied; that is, that there be a startling event and that the declarant was under the stress of said event when the statement was made. Thus, we conclude that the declaration was admissible under SDCL 19-16-6. It follows, therefore, that it is not incumbent upon us to decide whether the statement was admissible under SDCL 19-16-5, and we decline to render an opinion on the issue.

■ Appellant's next contention is that Share Clothier's statement was inadmissible under SDCL 19-12-3 because its probative value was substantially outweighed by the danger of unfair prejudice. As noted, *supra*, the trial court's initial determination was in agreement with this contention. The trial court, however, reconsidered the matter after the cross-examination of Jackson, determining that said statement had become more probative than prejudicial, because of questions posed by defense counsel to Jackson. As to this, the trial court stated:

[The issue] was raised yesterday with Murial Riggins, and I felt it was close at that time, but I didn't feel the issue had been sufficiently brought up by defense counsel. But today the cross-examination opened up that issue, I think, sufficiently to bring that statement in to balance the scales toward relevancy and against prejudice. Counsel asked the witness if she was sure that it was Share Dunn Clothier and not Mr. Richards that opened the door. One of the ways that she could know that it was Share Clothier that was there by her door was the fact that she heard her make this remark. There was an examination of this witness concerning her fear and offering money as a result of her fear, and the Court feels that to leave out that remark and have the jury get the impression that her fear was generated only from the shooting incident and not the remark, to me, takes away a very essential and integral part of what happened at that moment.

The admission of this statement was within the sound discretion of the trial court and we will not disturb the court's decision therein unless we are convinced that such discretion was clearly abused. *State v. Bult*, 351 N.W.2d 731 (S.D.1983); *State v. Percy*, 80 S.D. 1, 117 N.W.2d 99 (1962). We note that the trial court admonished defense counsel not to broach the instant issue by intimating to the jury that Muriel Riggins and Cheryl Jackson had no objective basis to be afraid after the shooting. The record shows that defense counsel chose to disregard this admonition, as indicated by the previous quotation. Thus, we cannot say that the trial court abused its discretion in determining that the probative value of Share Clothier's statement outweighed the possibility of prejudice after the cross-examination of Jackson.

Prior to the trial, the State indicated it was not asking for the death penalty. As a result, the trial court advised counsel in chambers that it would not discuss the death penalty with the prospective jurors, unless one of them asked about it. During voir dire, one of them expressed concerns

about punishment. The trial court responded by informing the prospective jurors that this was not a death penalty case and that punishment was not a matter for their concern. Appellant argues that the trial court erred (1) by instructing the prospective jurors that the death penalty was not involved, and (2) by refusing thereafter to further inform them appellant could receive a life sentence without parole if convicted of first-degree murder. The punishment for first-degree murder is death or life imprisonment in the state penitentiary. SDCL 22-6-1(1).

■ "In all cases in which the death penalty may be imposed and which are tried by a jury, upon a return of a verdict of guilty by the jury, the court *shall* resume the trial and conduct a presentence hearing before the jury." (Emphasis added.) SDCL 23A-27A-2. The procedure for ascertaining the punishment and possible imposition of the death penalty with or without a jury after a guilty verdict is provided by SDCL 23A-27A-10. Nothing in this section authorizes the prosecutor or judge to determine the penalty prior to a guilty verdict.* The procedure is provided in SDCL 23A-27A-10, which should be followed in capital cases. There was not, however, any prejudice to appellant by the procedure followed in this case. The issue of punishment by death was eliminated prior to trial by the prosecutor and the court, which left as the only punishment life imprisonment if convicted of first-degree murder. Appellant did not object to elimination of the death penalty issue, but wanted the court to only inform the prospective jurors that punishment was a matter for the court and not the jury. Under the posture of this procedure, there was no penalty issue for the jury to decide, and we believe no prejudice to appellant when the court told the jury it was not a death case.

■ The court did not err by refusing to instruct the jury that appellant could receive a life sentence without parole if convicted of first-degree murder. At the end of trial, the court instructed the jury they were to weigh the evidence presented and determine appellant's guilt or innocence solely on the basis of such evidence without any consideration as to the matter of punishment. Under the circumstances, we find no clear abuse of discretion of the trial court's actions. *See State v. King,* 346 N.W.2d 750 (S.D.1984). In any event, the penalty issue for first-degree murder was rendered moot when the jury failed to find him guilty of that charge.

■ In its opening statement, State told the jury that the body of Michael Hawkins was found on a back road, which led to the Yellow Thunder Indian Camp. Appellant requested a mistrial, contending that the sole purpose for the comment was to inflame the jury, as local prejudices existed toward the camp and its inhabitants. The trial court denied appellant's request for a mistrial and appellant contends that the denial constitutes prejudicial error, requiring a reversal and new trial. The record shows that Hawkin's body was, in fact, found on a road to the camp. A trial court's ruling based on misconduct of counsel will not be disturbed unless we are convinced there has been a clear abuse of discretion. *State v. Kidd,* 286 N.W.2d 120 (S.D.1979). We are not convinced the trial court clearly abused its discretion.

■ Appellant claims the evidence is insufficient to sustain a verdict of first-degree manslaughter, but does show justifiable homicide in defense of self and others. SDCL 22-16-15 provides:

Homicide is manslaughter in the first degree when perpetrated:

. . . .

(3) Without a design to effect death, but by means of a dangerous weapon;

---

* If the prosecutor has a recommendation, he may state it at the presentence hearing provided by SDCL 23A-27A-2. There may be situations where the State has no evidence of aggravating circumstances proscribed in SDCL 23A-27A-1 to justify the death penalty; but, SDCL 23A-27A-3 indicates the jury is to determine the mitigation or aggravation, unless it is a nonjury case, then the judge conducts the presentence hearing. SDCL 23A-27A-6.

(4) Unnecessarily, either while resisting an attempt by the person killed to commit a crime or after such attempt shall have failed.

Manslaughter in the first degree is a Class 1 felony. The trial court instructed the jury regarding lesser included offenses of first-degree murder, including first-degree manslaughter, provided by SDCL 22–16–15(3) and (4). The jury returned a verdict of first-degree manslaughter. A defendant may be found guilty of an offense necessarily included in the offense charged. SDCL 23A–26–8.

A verdict will not be set aside if the evidence and the reasonable inferences therefrom sustain a rational theory of guilt. *State v. Faehnrich,* 359 N.W.2d 895 (S.D.1984); *State v. Phinney,* 348 N.W.2d 466 (S.D.1984); *State v. West,* 344 N.W.2d 502 (S.D.1984); *State v. Ree,* 331 N.W.2d 557 (S.D.1983). State may rely on circumstantial evidence in proving the elements of a crime. *Bult, supra; State v. Wellner,* 318 N.W.2d 324 (S.D.1982); *State v. Schafer,* 297 N.W.2d 473 (S.D.1980). There can be no question this .25 caliber loaded handgun was a dangerous weapon as that term is defined in SDCL 22–1–2(9). It was even more so since the gun's safety mechanism was missing.

There was sufficient evidence to sustain the verdict under SDCL 22–16–15(3). The same is true of subsection (4), since the jury could have determined this killing was unnecessary. The evidence presented jury questions on the first-degree manslaughter issues, which were decided against appellant. It is also true of the justifiable homicide contention. SDCL 22–16–35 provides:

Homicide is justifiable when committed by any person in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant when there is reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, an imminent danger of such design being accomplished.

This issue was submitted to the jury with appropriate instructions and they resolved it against appellant. The evidence supports their verdict.

■ Appellant claims the court should have directed an acquittal in his favor on the first-degree murder charge because there was not any evidence of premeditation. Since the jury did not find him guilty of that charge, it is a moot issue. SDCL 23A–26–8. Nevertheless, while appellant testified he never intended to shoot the victim, he did determine the weapon was loaded and cocked before leaving the trailer. Also, he was quite upset. Immediately after the shooting, he said, "that's what he gets for messing with my truck." Expert testimony regarding the trajectory of the bullet contradicts the testimony of appellant claiming it was an accidental discharge. Premeditation is an element of first-degree murder. Premeditated design, however, need only exist for an instant. *State v. Kost,* 290 N.W.2d 482 (S.D.1980); *State v. Marshall,* 264 N.W.2d 911 (S.D. 1978). We believe the facts were sufficient to submit the case to the jury on the first-degree murder charge.

■ Finally, appellant argues that the failure of the coroner to send the victim's blood sample in for testing in compliance with SDCL 34–25–22.1 constitutes reversible error. SDCL 34–25–22.1 provides every county coroner is required to "take or cause to be taken blood samples of persons who have died from apparent violence, suicide or motor vehicle, agricultural, or industrial accident. The samples shall be taken within four hours after death or a reasonable time thereafter, and forthwith transmitted to the state chemical laboratory."

The burden is on appellant to affirmatively establish prejudicial error. *State v. Fender,* 358 N.W.2d 248 (S.D.1984). A showing of prejudicial error requires a showing from the record that under the evidence the jury might and probably would have returned a different verdict if the alleged error had not occurred. *Fender, supra.* Appellant claims prejudicial error but does not state how the error prejudiced him. We also fail to determine how

this omission prejudiced him. A completed test may have shown alcohol in decedent's blood. The record, however, is replete with testimony in regard to decedent having consumed alcohol and smoked marijuana on the night in question. It is probable a blood analysis would not have added anything which was not already fully and completely before the jury. *See State v. Myers*, 88 S.D. 378, 220 N.W.2d 535 (S.D. 1974). While this omission may have been an imperfection, it did not preclude appellant from being afforded a fair trial.

The judgment of the trial court is affirmed.

FOSHEIM, C.J., MORGAN and HENDERSON, JJ., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.