STATE OF NEBRASKA, APPELLEE, V. MARVIN L. HAVLAT,
APPELLANT.

381 N.W.2d 144

Filed February 7, 1986.    No. 85-252.

Thomas B. Donner, for appellant.

Robert M. Spire, Attorney General, and Timothy E. Divis, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

HASTINGS, J.

On October 11, 1983, a grand jury returned a true bill against the defendant on an indictment charging him with aiding and abetting delivery of marijuana, a Class III felony, and conspiracy to manufacture, distribute, or deliver marijuana, a Class III felony. Pursuant to a plea bargain, he pleaded nolo contendere to a charge of aiding and abetting the offense of possession of marijuana weighing more than 1 pound, a Class IV felony. He was sentenced to a term of imprisonment of from 20 to 40 months.

Defendant assigns as error: (1) Ineffective assistance of

counsel; (2) Finding by the district court that his plea of nolo contendere was freely, voluntarily, knowingly, and intelligently entered; (3) Denial by the trial court of defendant's motion to withdraw his plea of nolo contendere; and (4) The imposition of an excessive sentence. We affirm.

Since at least January 16, 1984, defendant was represented at all times by one of three different attorneys: pretrial counsel, trial counsel, and appellate counsel. Both pretrial and trial counsel are Lincoln attorneys. Pretrial counsel has specialized in the area of criminal defense for the last 13 years; trial counsel has specialized in trial practice for 27 years, both civil and criminal.

On December 11, 1984, while represented by trial counsel, defendant entered his plea of nolo contendere. Later, on December 13, defendant filed, pro se, a motion to withdraw that plea. Hearing was had on that motion on December 27, while defendant was still represented by trial counsel, and it was overruled.

Hearing on a second motion to withdraw defendant's plea was commenced on March 1, 1985, at which defendant was represented by his present appellate counsel. The second motion to withdraw was also overruled.

During the hearing on defendant's plea, he was thoroughly interrogated by the trial judge, who fully and fairly advised him of all of his rights and who received facts sufficient to support the plea. Defendant advised the court that he understood all of his rights and that he was waiving those rights by entering a plea of nolo contendere.

The defendant further advised the court that he had discussed all of his possible defenses with his trial attorney and that he was satisfied with the representation furnished by his lawyer. After hearing the facts related which the State expected to prove, and hearing an explanation by both defense counsel and the county attorney, the defendant reiterated that he still wanted to tender a plea of nolo contendere.

The defendant testified at length during his final hearing seeking withdrawal of his plea.

Defendant admitted having a discussion with his attorney about entering a plea, but initially, he, the defendant, did not

want to plead to a felony but would plead to a misdemeanor. The defendant did concede that at about this same time, during a conversation with his attorney, he agreed to accept the present plea agreement if the "State would not accept . . . taking the video depositions and wouldn't accept bringing my witnesses back [from California]." He testified that he would probably "do what he [counsel] wanted me to do."

The defendant testified that he did not believe he was guilty of the charges contained in the indictment and that he wanted a trial to clear the air. He alleged that he showed his trial counsel statements of five witnesses who supposedly would contradict another potential State's witness as to defendant's whereabouts but that counsel did not look at them. However, those statements do not appear in the record.

On the morning that defendant entered his plea, he said he was "strapped and worn out." He did say that he had conversations with his attorney about the merits of his case. He insisted that his attorney told him that he would either have to plead that morning or go to trial. However, defendant gave as his opinion, after the fact, that he did not believe his attorney was ready to go to trial. He based this conclusion in part on the fact that he said "we" had not seen the instate defense witnesses.

During the 4 to 5 months trial counsel represented him, the defendant claimed to have conferred with him only six times. Defendant testified that counsel failed to interview important witnesses and failed to perform certain tasks even after being asked by the defendant. However, no offer of proof was made on either point. He also complained that counsel neglected to obtain transcripts of alleged coconspirators' proceedings in other courts.

Finally, defendant claimed that although he had been given an opportunity to discuss trial tactics with his pretrial counsel, he did not have any such opportunity with trial counsel.

Both attorneys also testified. Pretrial counsel stated that he represented the defendant both as privately retained and court-appointed counsel, and during that period of time had the opportunity to discuss the merits of the particular case. As a part of that representation, counsel took a number of

depositions in California and reviewed various interviews had with witnesses living within Nebraska. He felt that those depositions were very necessary, but as to certain other planned depositions which were not taken, he did not know whether they would be absolutely necessary.

Pretrial counsel had access to the witness list of the State and gave as his opinion that it was not necessary to contact all of those witnesses, particularly where he had access to police statements and reports. Counsel also indicated that the defendant was uncooperative about appearing at depositions and became difficult to communicate with when differences arose on how to pursue the case.

Trial counsel stated that he had discussed the case with the defendant on many occasions. Counsel's computer worksheet shows numerous telephone and personal conferences with the defendant, conferences with pretrial counsel and the prosecuting attorney, review of file and research, contacts with witnesses, and other matters relating to defense of the defendant, totaling approximately 70 hours up until the time the plea of nolo contendere was tendered.

Counsel testified that depositions in California were to be taken on December 7. However, on December 5 the county attorney offered a plea bargain, in part based upon the cost of the out-of-state depositions to the county. Counsel was unable to reach the defendant until the following day, and at that time defendant decided to think about it overnight. The next day defendant called counsel twice from California. During the first call, lasting in excess of 30 minutes, there was an extensive discussion involving the pros and cons of the case, including the fact that the State would not agree to reduce the charges. The defendant wanted to think some more about the plea agreement, and then called counsel back and stated that he would accept the offer.

Counsel had no further contact with the defendant until they both appeared in court on December 11. The defendant expressed "a great deal of uncertainty as to what he wanted to do"; however, after a detailed discussion of his various rights and the consequences of entering a plea, the defendant pled no contest.

While counsel agreed that the defendant was under a great deal of stress during the arraignment, he testified that the defendant was rational and coherent and understood what was said to him. The day after the arraignment, the defendant informed counsel that he wanted to withdraw his plea.

In ruling on the final motion to withdraw the plea, the trial court made extensive findings of fact and conclusions of law. Included within those findings were: (1) Trial counsel was ready and willing to interview and depose certain witnesses in California when the defendant accepted a plea bargain, making such interviews unnecessary; (2) Counsel had statements of most of the other coconspirators, and defendant disclosed no evidence of inconsistent testimony by those witnesses; (3) Counsel had statements or transcripts from most of the witnesses detailed by the defendant, none of which disclosed inconsistent statements by them; (4) Contrary to the complaint of the defendant that he was not told about the final determination of the court's ruling on a motion to suppress, defendant knew that such motion would be taken up at the time of trial; (5) Counsel had, in spite of claims by the defendant to the contrary, fully advised defendant of the consequences and ramifications of entering a plea of nolo contendere; and (6) Defendant's plea, based on the trial court's examination of the arraignment proceedings and testimony on the motions, disclosed that he freely, voluntarily, knowingly, and intelligently tendered his plea and that trial counsel rendered constitutionally required effective assistance of counsel and did conscientiously protect the interests of the defendant. The record supports such findings.

The test for determining the effectiveness of counsel in a criminal prosecution is whether trial counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law in his or her geographical area and conscientiously protected the interests of the client. *State v. Juhl*, 218 Neb. 792, 359 N.W.2d 109 (1984). The person challenging the competency of counsel has the burden of proof to establish the counsel's incompetence. *State v. Heathman*, 216 Neb. 609, 344 N.W.2d 670 (1984). Where one maintains that counsel was inadequate or ineffective, one must also show how or in what manner that

alleged inadequacy prejudiced the defendant. *State v. Juhl, supra.*

As suggested by the findings of the trial court, defendant's complaints as to the effectiveness of counsel are limited to the complaint that he failed to interview certain witnesses. For the most part the record discloses that counsel had the necessary information either through copies of statements, police reports, or testimony in other proceedings. In other cases reasonable efforts had been made by counsel to obtain the desired interviews without success. Finally, and as to the bulk of the complaints regarding missing depositions, the defendant's agreement to participate in the plea bargain obviated any further efforts in that regard. The record also discloses no support for defendant's contention that he was not advised by counsel of the consequences and ramifications of tendering a plea.

We agree with the district court that the record discloses that defendant was afforded effective assistance of counsel, as required by law.

The record made at the time of arraignment fully supports a finding that defendant's plea was freely, voluntarily, and intelligently tendered. His only denial of guilt was a statement made by him after the fact that he did not believe he was guilty of the charges contained in the indictment. However, the plea that he tendered was to a different and lesser charge.

Other than the fact that he obviously changed his mind after the plea had been accepted, defendant afforded no credible evidence sustaining his claim of involuntariness or that he did not comprehend what he was doing at the time. A defendant should not be allowed to withdraw a plea of guilty or nolo contendere in the absence of proof by the defendant that such withdrawal is necessary to correct a manifest injustice. *State v. Jipp,* 214 Neb. 577, 334 N.W.2d 805 (1983). Such proof is lacking in this case.

Defendant's claim of excessiveness of the sentence is without merit. A sentence imposed within the statutory limits will not be disturbed on appeal absent a showing of an abuse of discretion by the trial court. *State v. Patterson,* 213 Neb. 686, 331 N.W.2d 500 (1983). The sentence of 20 to 40 months was well within the

prescribed limitation of 5 years.

Additionally, the record discloses evidence of a widespread operation involving the growing and distribution of marijuana, a 1981 harvest of from 1,500 to 2,000 pounds, and representations by the defendant to prospective growers of harvests worth $50,000 to $60,000 per year. Considering these facts, as well as the sentences received by coconspirators, there was no abuse of discretion on the part of the trial judge.

Because no error appears in the proceedings of the district court, its judgment is affirmed.

AFFIRMED.