Dennis MITCHELL, Petitioner
and Appellant,

v.

Joe CLASS, Warden of the South Dakota State Penitentiary, and Dan Jacobson, Chairman of the South Dakota Board of Pardons and Paroles, Appellees.

No. 18650.

Supreme Court of South Dakota.

Considered on Briefs Oct. 19, 1994.

Decided Dec. 7, 1994.

William D. Gerdes of Williams, Gellhaus & Gerdes, P.C., Aberdeen, for petitioner and appellant.

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Asst. Atty. Gen., Pierre, for appellees.

SABERS, Justice.

Mitchell appeals from denial of petition for writ of habeas corpus based on a claim of ineffective assistance of counsel. We affirm.

## FACTS

The facts are set out in detail in *State v. Mitchell*, 491 N.W.2d 438 (S.D.1992). Mitchell married S.D.'s mother in October, 1978. S.D. was eight years old at that time. Mitchell and S.D.'s relationship began to deteriorate when S.D. became a teenager. He began counselling S.D. that she should begin dating, that boys would expect her to have intercourse with them, and that she should go on birth control pills. He also told her that she could not have birth control pills if she were a virgin. In 1984, when S.D. was thirteen, he inserted a butter knife into S.D.'s vagina to break her hymen. A few weeks later, he had intercourse with S.D. at the family's lake cabin to enlarge her vagina. He had sex with S.D. again a few months later to "educate" her about intercourse.

When S.D. was fourteen, she came home late and Mitchell threatened her with indefinite grounding unless she had intercourse with him again. On another occasion, he had intercourse with S.D. when he told her that his counselors had told him to have sex with her one last time to "get it out of his system." In May of 1986, the final rape occurred. He forced S.D. to have sex with him in order to get parental permission to attend a school science field trip. In October of 1990, S.D. told a counselor at college that she had been sexually abused by her stepfather. She later gave the police department a written statement.

Mitchell was charged and convicted of six counts of second degree rape. He was sen-

tenced to thirty years in the South Dakota State Penitentiary on October 2, 1991. This court affirmed his convictions on direct appeal in *Mitchell,* 491 N.W.2d 438.

On August 18, 1993, Mitchell filed a Petition for Writ of Habeas Corpus. He claimed ineffective assistance of counsel in violation of his constitutional rights in four areas:

1) failure to call Mitchell as a witness in his case in chief;

2) failure to ask for the removal of Trial Judge Gilbertson because he previously prosecuted Mitchell;

3) failure to adequately object to instances of prosecutorial misconduct; and

4) failure to adequately investigate or interview witnesses who could have impeached the State's witness.

The circuit court denied Mitchell's petition on December 3, 1993.

We have adopted the two-prong test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for ineffective assistance of counsel claims. *Luna v. Solem,* 411 N.W.2d 656, 658 (S.D.1987). First, Mitchell must prove that his trial counsel's performance was deficient. *Id.* (citations omitted). He must show that trial counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.* Secondly, he must show that the deficient performance "prejudiced the defense" by showing that "counsel's errors were so serious as to deprive the defendant of a fair trial[.]" *Id.* The reasonableness of trial counsel's actions is evaluated from his perspective at the time the alleged error occurred. *Id.*

Prejudice exists where "there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.; see Lockhart v. Fretwell,* 506 U.S. ——, ——, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993) (defendant must show not only that outcome would have been different but that counsel's errors were so serious as to deprive him of a fair trial).

1. **Failure to call Mitchell as a witness in his case in chief.**

■ Mitchell's first claim of ineffective assistance is that trial counsel failed to call Mitchell as a witness in his own case in chief. Mitchell was only called as a surrebuttal witness which limited the scope of his testimony to primarily the first count of rape. He claims that trial counsel should have called him in his case in chief so that he could have offered testimony to refute all six counts of rape. Mitchell had been prepared to be a witness in his case in chief. Trial counsel testified at the habeas petition hearing that he did not call Mitchell as a witness in his case in chief for several reasons. He stated that Mitchell would not have made a good witness because he was nervous and did not speak well. Mitchell laughs under his breath when he talks and this could have had an adverse impact on the jury. Trial counsel also stated that he had used other non-interested witnesses to impeach the victim's testimony. He believed that S.D. had been sufficiently impeached. Also, he wanted to eliminate as much emotion surrounding the case as possible.

It appears trial counsel made a tactical error. He should have called Mitchell as a witness during his case in chief in order to better counter victim's testimony. Only Mitchell and victim were present during these incidents. Only Mitchell could adequately discredit victim's testimony. However, the habeas court found that trial counsel's strategy was a "valid and reasonable means to defend the Petitioner in light of all the circumstances in the case." Not all tactical misjudgments amount to ineffective performance. The habeas court's finding has not been shown to be erroneous.

2. **Failure to ask for the removal of Trial Judge Gilbertson because he previously prosecuted Mitchell.**

■ Mitchell claims ineffective assistance of counsel for failure to remove Judge Gil-

bertson who previously prosecuted Mitchell on a felony bad check count in 1976 and the revocation of probation for the same case a short time later. Judge Gilbertson's involvement was not objected to by Mitchell until the habeas hearing. Trial counsel believed that Judge Gilbertson was not biased. He testified that Judge Gilbertson granted most of counsel's pre-trial motions and that no indication of bias was present.

At the time of Mitchell's trial, September 4 and 5, 1991, the Code of Judicial Conduct provided, in part:

A judge *should* disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

Code of Judicial Conduct, SDCL ch. 16–2, Appx., Canon 3(C)(1)(a) (emphasis added).

It was not mandatory that Judge Gilbertson disqualify himself from the proceeding. The Code only required that he "should" disqualify himself if certain conditions were present. Regarding the discretionary nature of this rule, we have stated:

Canon 3(C)(1) is a broad standard by which a judge should sua sponte determine the matter of self-recusal. It stands as a guiding precept upon which every judge, by an objective in-depth search of his or her own conscience, must decide whether a fair trial dictates he or she should make way for another judge to preside in the case. Recusal may be self-initiated or triggered by the filing of a motion for change of judge predicated upon prejudice. It is for the judge under Canon 3 to initially determine whether a fair trial dictates recusal. Canon 3 provides an objective standard upon which to also determine

whether a judge in a given instance should disqualify himself or herself. *State v. Smith*, 242 N.W.2d 320 (Iowa 1976). The right to a change of judge is not one of absolute right. The judge is entitled to consult his or her own mind and he or she, perhaps better than anyone else, knows whether or not he or she can give a defendant a fair and impartial trial in every way. *Smith*, 242 N.W.2d at 320.

*Tri–State Refining v. Apaloosa Co.*, 452 N.W.2d 104, 106–107 (S.D.1990). "A judge is not disqualified merely because he at some earlier time prosecuted the criminal defendant appearing before him." *State v. Reddick*, 430 N.W.2d 542, 546 (Neb.1988); *see State v. Bird Head*, 225 Neb. 822, 408 N.W.2d 309 (1987).

Judge Gilbertson could have disqualified himself from the case if he believed that he could not provide Mitchell a fair and impartial trial. Trial counsel testified that Judge Gilbertson had been ruling in Mitchell's favor on almost every pre-trial motion. The habeas court found that "Judge Gilbertson's failure to disqualify himself based on his prior prosecution of Petitioner does not, therefore, rise to the level of prejudice as a matter of law for Habeas Corpus purposes under an ineffective assistance of counsel claim." Despite the testimony in footnote 1, *infra*, and the accompanying text, Mitchell's showing of bias or prejudice was insufficient. Therefore, the habeas court's finding has not been shown to be erroneous.

### 3. Failure to adequately object to instances of prosecutorial misconduct.

Mitchell claims ineffective assistance because trial counsel failed to adequately object to four statements made by prosecutor in closing arguments. Prosecutor stated that if "one scrap of dirt" about S.D. was known by Mitchell's witnesses, they would have testified about it.[1] Trial counsel testified at the

1. The statement was:
Prosecutor: Because you may rest assured that if there was one scrap of dirt that they could've picked up, they would have used it.

Trial Counsel: Your Honor, I'm going to object. Could I approach the bench?
The Court: No. Sit down.

habeas hearing that due to the trial court's emphatic refusal to hear his objection, he did not pursue the matter any further. He did not wish to anger the judge and turn the jury against the defense. During jury deliberations, trial counsel made a motion for a mistrial because of the "dirt" statement. He argued it was a "misstatement of what the State knew to be true and exactly contrary to the ruling they sought and obtained from the Court," because the trial court's rape shield ruling allowed no evidence of S.D.'s sexual history. The trial court refused to grant a mistrial. We affirmed the trial court's ruling in *Mitchell,* 491 N.W.2d at 443.

The habeas court found that failure to adequately object to the "dirt" statement did not constitute ineffective assistance. Mitchell has not shown the habeas court's finding to be erroneous. *Id.* In so holding, we do not intend to condone the conduct of prosecutor.

> We must [ ] remind prosecutors that it is the foundation of the criminal justice system to see that the defendant and every defendant gets his day in court and a fair trial. This burden weighs as heavily on prosecutors as it does on judge, jury and defense counsel.

> The [dirt statement was] made by the prosecutor with full knowledge that [ ] the trial court had precluded [Mitchell] from [introducing any evidence that S.D. was on birth control pills and had intercourse with boyfriends during the relevant period of time.] Consequently, the prosecutor knew that [Mitchell] would be unable to refute his argument. This conduct is simply and basically unfair tactics on the part of the prosecutor and of itself constitutes error. We hold, however, that in the light of the evidence adduced in support of the prosecution that such error does not rise to the degree to require a reversal. [*Mitchell,* 491 N.W.2d at 443].

*State v. Havens,* 264 N.W.2d 918, 923 (S.D. 1978). In concluding this matter, we simply

state that the next time a rape shield ruling is similarly used as a sword, it may become a two-edged sword requiring a new trial.

■ Next, the prosecutor stated:

> This man is a con man. The evidence has shown you that. He's a manipulative man. And there are con men and manipulative men who, through pressure and fast talking, take money from old people or the mentally slow people or the greedy people. And that is bad.

Trial counsel moved for a mistrial on the basis of this statement after jury deliberations began. We affirmed the trial court's finding that the "con man" statement was fair argument based on the evidence presented. *Mitchell,* 491 N.W.2d at 444. On habeas, Mitchell asserts that trial counsel failed to object at the time the argument was made and that on direct appeal, this court incorrectly relied upon *State v. McDowell,* 391 N.W.2d 661, 666 (S.D.1986) (holding that no showing of an abuse of discretion in denial of mistrial motion because trial counsel objected to prosecutor's statements *immediately* and the jury was admonished to disregard the statements so no showing of an abuse of discretion in denial of mistrial motion). He claims trial counsel's motion for mistrial occurred outside the jury and that the jury was not properly instructed to disregard the "con man" statement. The habeas court found that defense counsel's performance was not deficient and Mitchell has not shown this to be erroneous. Additionally, it should be noted that there was evidence in the record, if believed, to support the prosecutor's argument as fair comment.

■ Next, trial counsel did not object to the following statement:

> You are going to be here for [trial counsel] and I'm sure that you're going to hear him use the words "facts, facts, facts. The State has no facts. They're relying on emotion." Of course, I'm relying on emotion. Because I saw a girl tear her guts

---

Prosecutor: There was never one bad thing said about this girl by any one of the defense[ ] wit-

nesses.

out up there. And I saw a lot of other people having their own guts tore out because of [w]hat this defendant did to [S.D.].

Trial counsel testified that he believed that no grounds existed to object because the prosecutor was just responding to his own argument. Trial counsel opened the door for prosecutor to develop this argument. *See State v. Clothier*, 381 N.W.2d 253, 257 (S.D. 1986). Prosecutor was only responding to Mitchell's argument that the State's case was based on emotion, not facts. The habeas court found that trial counsel was not ineffective for failure to object to this statement and Mitchell failed to show that this finding was erroneous.

▪ Trial counsel failed to object to the following statement by the prosecutor:

I think probably as good an example of the type of parent that Dennis Mitchell is and his wife, is the fact that he has brought his 11 year old daughter into the courtroom during many of these stages. That cannot help but hurt this little girl sometime. There's no necessity for her being here other than for you to see her. But I think maybe it is a telling point. This man is not concerned about his daughters.

Trial counsel pointed to the younger daughter on previous occasions apparently to highlight that Mitchell was a family man. The prosecutor was merely responding to this argument. *See Clothier*, 381 N.W.2d at 257. Trial counsel was not asked about this instance at the habeas hearing. The habeas court found that Mitchell did not meet his burden of proof on this issue and he has not shown this finding was erroneous.

▪ In the alternative, Mitchell claims that the prosecutorial misconduct rises to the level of plain error. According to SDCL 23A–44–15, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." A plain error is one which must be both "obvious" and "substantive." *People In Interest of R.R.*, 447 N.W.2d 922, 927 (S.D.1989) (citation omitted). "[E]gregious misconduct" must be shown and generally, "prejudicial remarks made by a prosecutor to the jury do not give rise to denial of due process." *Luna*, 411 N.W.2d at 662. None of these matters constitute "plain error." *State v. Davi*, 504 N.W.2d 844 (S.D. 1993).

**4. Failure to adequately investigate or interview witnesses who could have impeached the State's witness.**

▪ Mitchell argues that trial counsel failed to adequately investigate and call two possible witnesses for impeachment. According to Mitchell, the cousin and the aunt of S.D. could have testified that S.D. had stayed with them on some occasions. This could have allegedly refuted S.D.'s testimony that she never told the two because she never stayed there. Trial counsel did not believe that the cousin had "anything that she was going to offer us." It appears that side of the family had a very negative reaction to the whole affair and that trial counsel believed the cousin would not be helpful. Mitchell failed to subpoena these two people for the habeas hearing. The habeas court found that Mitchell did not meet his burden of proof that counsel's failure to investigate these possible impeachment witnesses resulted in ineffective assistance or prejudice. We agree.

We affirm the habeas court on all issues.[2]

MILLER, C.J., and WUEST, AMUNDSON and KONENKAMP, JJ., concur.

---

2. Mitchell also argues that there was insufficient evidence for the jury to find him guilty. In determining the sufficiency of the evidence, this Court will not " 'resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence.' " *State v. Hanson*, 456 N.W.2d 135, 139 (S.D.1990) (citation omitted). The habeas court found that there was "clearly enough evidence for conviction" and that the issue was without merit. Mitchell has not shown this finding to be erroneous.

Mitchell also argues that the trial court improperly ruled that the State could refer to Mitchell's prior crimes for purposes of impeachment in violation of his constitutional rights. As found by the habeas court, the trial court denied the state's motion to use prior convictions and granted Mitchell's motion to prohibit their use.

On surrebuttal, Mitchell was not asked about any of his prior convictions. The habeas court found that this issue was without merit and we agree.