David W. GARRITSEN, Petitioner
and Appellant,

v.

Walter LEAPLEY, Warden of the South
Dakota Penitentiary, Appellee.

No. 18787.

Supreme Court of South Dakota.

Considered on Briefs Sept. 14, 1995.

Decided Dec. 20, 1995.

John A. Schlimgen of Stuart and Gerry, Sioux Falls, for petitioner and appellant.

Mark Barnett, Attorney General, Ann C. Meyer, Assistant Attorney General, Pierre, for appellee.

SABERS, Justice.

Garritsen appeals the denial of his application for writ of habeas corpus. The trial court denied the application as untimely and on the merits. Garritsen appeals. We reverse on timeliness but affirm on the merits.

## FACTS

In February 1980, Garritsen was found guilty by a jury of two counts of first degree

rape and as a habitual offender. He was sentenced to life imprisonment. He appealed his conviction, and this court affirmed in *State v. Garritsen*, 302 N.W.2d 409 (S.D. 1981) (*Garritsen I*).

Garritsen filed a "Petition for Post Conviction Relief" under the Uniform Post–Conviction Procedure Act on June 8, 1983 in Davison County. The petition was written pro se and contained two issues. The Uniform Post–Conviction Procedure Act was repealed effective July 1, 1983. On August 4, 1983, Garritsen amended his petition for post-conviction relief. Apparently no further action was taken on this petition until the present dispute.

In June, 1984, Garritsen filed an application for writ of habeas corpus to challenge a 1970 Minnehaha County burglary conviction. He claimed his guilty plea was not voluntary. The trial court denied his application. We reversed and remanded for resentencing, finding his 1970 burglary conviction invalid in *Application of Garritsen*, 376 N.W.2d 575, 578 (S.D.1985) (*Garritsen II*). On remand, Garritsen was resentenced to life imprisonment and he appealed. We affirmed the sentence in *State v. Garritsen*, 421 N.W.2d 499, 500 (S.D.1988) (*Garritsen III*).

On December 19, 1985, the trial court granted Garritsen's attorney "whatever time he needed" to proceed on Garritsen's application in Davison County. The amended application was filed on June 23, 1989 and contained four issues, none of which were in the first application or its amendment. It stated, "[t]his application is an Amendment from the Post–Conviction to Habeas Corpus Act."

The trial court denied the application in a memorandum decision. Before findings of fact and conclusions of law and an order were entered, the State filed a motion to dismiss the application as untimely, which was denied on April 15, 1991. Garritsen filed a motion to reconsider his application based on this court's decision in *Stuck v. Leapley*, 473 N.W.2d 476 (S.D.1991), and on the issue of untimeliness. A hearing was held and the trial court entered a memorandum decision denying the application on December 4, 1991. On February 1, 1994, the trial court signed findings of fact and conclusions of law which

denied Garritsen's application on its merits (merits findings). No reason for the 26–month delay appears in the record.

On April 5, 1994, the trial court entered findings of fact and conclusions of law which denied Garritsen's motion for reconsideration and denied his application on the basis of untimeliness (timeliness findings). The trial court ruled Garritsen's petition was barred by the federal rules governing habeas corpus and the equitable doctrine of laches. Finally, the trial court entered an order, dated April 5, 1994, which incorporated both the merits and timeliness findings and denied Garritsen's application. The trial court also revoked its denial of the state's motion to dismiss. Garritsen appeals on timeliness and on the merits.

## A. Whether Untimeliness was a Proper Reason for Denial of the Writ of Habeas Corpus?

■ Garritsen claims the trial court's order denying the motion to dismiss became the "law of the case," and could not be revoked. He cites *Shaffer v. Honeywell*, 249 N.W.2d 251 (S.D.1976). The *Shaffer* court declined to apply the "law of the case" doctrine for two reasons.

> First, the purpose behind the doctrine is to avoid relitigation of issues in subsequent proceedings in the same case—remand, retrials, or appeals ... Secondly, as a practical matter the application of the rule prior to entry of judgment would inhibit the trial court in correcting what it believed to be an erroneous decision. The rule of the 'law of the case' should not be used to perpetuate an erroneous decision at this stage of the proceedings.

*Id.* at 260. Here, the trial court revoked its decision after a motion for reconsideration and before the case was appealed. The doctrine of "law of the case" does not apply.

■ We next consider whether the trial court properly denied Garritsen's amended application as untimely.

In the memorandum decision dated December 4, 1991 and in the timeliness findings, the trial court relied on *Gregory v. Solem*,

449 N.W.2d 827 (S.D.1989), and SDCL 21–27–16.1, which provides:

> All grounds for relief available to a petitioner under this chapter shall be raised in his original, supplemental or amended application. Any ground not raised, finally adjudicated or knowingly and understandingly waived in the proceedings resulting in his conviction or sentence or in any other proceeding that the applicant has taken to secure relief from his conviction, or sentence, *may not be the basis for a subsequent application,* unless the court finds grounds for relief asserted which for reasonable cause were omitted or inadequately raised in the original, supplemental or amended application.

(Emphasis added). In *Gregory,* this court applied the statute after the petitioner filed multiple applications for relief. In the present case, Garritsen amended his original petition for post-conviction relief but has not had a hearing on its merits. This is not a "subsequent application" and SDCL 21–27–16.1 and *Gregory* do not apply.

█ The trial court applied Rule 9(a) of the federal rules governing habeas corpus cases, which provides:

> Delayed petitions: A [petition] may be dismissed if it appears that the government has been *prejudiced* in its ability to respond to the [petition] by delay in its filing unless the [petitioner] shows that it is based on grounds of which he could not have had knowledge by the exercise of *reasonable diligence* before the circumstances prejudicial to the government occurred.

(Emphasis added.) [1]

In determining whether the State was prejudiced in its ability to respond, the trial court stated:

> The lengthy passage of time between conviction and this amended application for habeas relief is a factor which by itself unduly works to the advantage of a felon belatedly seeking relief from conviction. Memories may diminish and become atten-

uated. The facts and circumstances may be difficult, if not impossible to reconstruct. Garritsen's amended petition was filed nine years after his conviction, resulting in inherent difficulties which are not present in similar petitions which are timely filed.

The trial court also stated that "the untimely application by [Garritsen] for relief upon these issues prejudices the State in its ability to respond." The likelihood of prejudice is supported by the nine-year delay in filing the amended application.

Assuming prejudice was proven, we next consider whether Garritsen's application was based on "grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances causing the prejudice occurred." Garritsen was convicted in 1980. The grounds for at least two issues in the application were based upon this court's 1985 decision in *Garritsen II.* The case was then remanded for resentencing, which was completed in 1987 and affirmed in March, 1988. Garritsen's amended application was filed just over one year later. Even with reasonable diligence, Garritsen would not have known of two of his issues until at least 1985. He would not have known how he would be resentenced until 1988, and therefore did not know whether he would receive the relief he sought under his Minnehaha County habeas action until 1988. Therefore, Garritsen's petition should not be dismissed as untimely. We reverse the trial court's decision on the issue of untimeliness and proceed to the merits of the application.

## B. Proof of Validity of Petitioner's Prior Conviction at the Habitual Offender Trial.

Garritsen was convicted as a habitual offender at a jury trial on February 27, 1980. Prior convictions included burglary (later found invalid because of an invalid plea in *Garritsen II* ) and a federal conviction for interstate transportation of stolen property.

---

1. The trial court did not apply SDCL 21–27–3.2, which uses the same standards as the federal rule, but includes a presumption of prejudice if the application is more than five years after conviction.

■ Garritsen's brief claims the State failed to prove the validity of his federal conviction because it did not show he was advised of his *Boykin* (*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) rights before pleading guilty. Trial counsel had the burden of placing the constitutionality of the prior conviction in issue.

Raising a challenge to a prior conviction requires the defendant do more than just make a naked claim. He must initiate a challenge by presenting some credible evidence "through his testimony or other affirmative evidence."

*State v. Moeller*, 511 N.W.2d 803, 810 (S.D. 1994) (citation omitted). Garritsen did not present *credible* evidence that the conviction was invalid. Trial counsel made objections before the State introduced this conviction and moved to strike all evidence of it claiming an unlawful delegation of legislative authority to the federal government and a violation of ex post facto laws.

■ However, trial counsel made no claim nor showing that Garritsen was not advised of his *Boykin* rights. Even if trial counsel had challenged Garritsen's prior conviction, this argument would be rendered moot by the recent supplement to the habeas corpus record, a transcript of Garritsen's guilty plea which shows both advisement and waiver of his *Boykin* rights. Therefore, we affirm this part.

## C. Claims of Ineffective Assistance of Counsel.

We have adopted the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for ineffective assistance of counsel claims. First, [the applicant] must prove that his trial counsel's performance was deficient. He must show that trial counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." Secondly, he must show that the deficient performance "prejudiced the defense" by showing that "counsel's errors were so serious as to deprive the defendant of a fair trial[.]" The reasonableness of trial counsel's action is evaluated from his perspective at the time the alleged error occurred.

*Mitchell v. Class*, 524 N.W.2d 860, 862 (S.D. 1994) (citations omitted). Garritsen claims trial counsel erred in seven ways.

### 1. Failure to Call an Expert.

■ Garritsen's first claim is that trial counsel failed to call a medical expert to support his theory of the case and to discredit the State's medical expert. The trial court held trial counsel's decisions were trial strategy and binding on Garritsen.

The State's medical expert was the doctor who examined the two women. He testified to their physical and mental states when they arrived at the emergency room that evening and the results of the rape tests. When the doctor discussed his findings including the presence of sperm and the levels of acid phosphatase [2] in each of the women, trial counsel cross-examined him about the significance of the levels of acid phosphatase. The doctor testified the levels indicated sexual intercourse within the previous 36 hours, and concluded that since the women alleged rape, the levels of fluid were from that sexual contact.

On cross-examination, the doctor admitted he did not have experience with rape victims and that he was not an expert on the significance of acid phosphatase. Trial counsel had information about acid phosphatase and its significance which he had gained from an expert in a different trial. His information showed the levels of acid phosphatase in one woman were insignificant because her test results were negative for sperm and certain levels of acid phosphatase are normal. The levels of acid phosphatase found in the other woman were higher than normal and her test results showed the presence of sperm, but

---

**2.** Acid phosphatase is defined as: a phosphatase (an enzyme that hydrolyzes monophosphoric esters) active in an acid medium; such enzymes are found in mammalian erythrocytes and yeast, prostatic tissue, spleen, kidney, blood plasma, liver, and pancreas. Dorland's Illustrated Medical Dictionary, 25th Edition. The doctor testified at trial that he tested for the presence of acid phosphatase, "an enzyme which is present from male prostatic secretions and prostate secretions."

trial counsel indicated the doctor's finding that there had been intercourse actually corroborated Garritsen's defense, which was that one woman consented to sexual relations.

When asked about his trial strategy in cross-examining the doctor rather than calling an expert to rebut his testimony or making a motion to strike the testimony because the doctor was not an expert, trial counsel indicated he was attempting to render the testimony ineffectual. Trial counsel emphasized the *doctor's background in surgery and* very little emergency room experience. The doctor admitted these women were the first rape victims he had examined and that he was not familiar with techniques used by doctors in Sioux Falls to determine the significance of levels of acid phosphatase. Trial counsel asked the doctor whether certain levels of acid phosphatase indicated intercourse within 24 hours. The doctor answered, "that's out of my field." To some extent, trial counsel's questions and the doctor's answers undermined the doctor's conclusions and credibility without calling an expert.

■ The *doctor's opinion was based on* more than the levels of acid phosphatase. He examined the women and observed their physical and mental states. He testified that he took into consideration all observations made during his examination in determining that there had been sexual penetration. Trial counsel cross-examined the doctor about his physical findings because one of the women testified she was taken down into a ditch where there were weeds and stubble. The doctor did not find any markings on her buttocks, which trial counsel argued would have resulted if intercourse took place in the ditch. Thus, the doctor's testimony did not necessarily corroborate the women's version of the facts. The jury could weigh the doctor's testimony against his admissions of his lack of expertise and the absence of physical markings from the ditch. The jury could disregard the doctor's conclusions. *State v. McCord*, 505 N.W.2d 388, 394 (S.D.1993).

■ " 'A difference of trial tactics does not amount to ineffective assistance of counsel.' " *Fast Horse v. Leapley*, 521 N.W.2d 102, 106 (S.D.1994) (quoting *People v. Nickson*, 120 Mich.App. 681, 327 N.W.2d 333, 335 (1982)). Trial counsel employed a trial strategy for the consent defense. There is no showing that failure to call an expert under these circumstances constituted ineffective assistance of counsel.

## 2. Failure to Move to Strike the Doctor's Testimony for Lack of Expertise.

■ "Generally, the making or failure to make motions and objections are trial decisions within the discretion of trial counsel." *Jenner v. Leapley*, 521 N.W.2d 422, 425 (S.D.1994) (citations omitted). Such trial decisions must "reasonably relate" to trial strategy which would be utilized by competent counsel in similar circumstances. *Id.* at 425–26. For the reasons stated in the prior discussion, trial counsel's decision did not render his representation of Garritsen deficient.

## 3. Use of Details of Prior Convictions When Attempting to Lessen the Effect of Impeachment.

■ Trial counsel knew Garritsen's prior felony offenses could be used on cross-examination to impeach his credibility. Trial counsel attempted to minimize the effect of this impeachment by asking Garritsen about the crimes during direct examination. He asked questions identifying the prior crimes, and Garritsen admitted the convictions. When it was time for the State to prove identity at the later habitual offender trial, the prosecutor called the court reporter and asked that the portion of testimony be read wherein Garritsen admitted the prior convictions. Garritsen argues trial counsel should not have asked specifics of prior felonies, but only whether he had prior convictions.

Trial counsel asked Garritsen if he had been convicted of burglary, interstate transportation of stolen property, and aggravated assault.[3] He specifically asked if the assault

---

**3.** The aggravated assault conviction occurred in Minnesota. Trial counsel moved and the trial

involved a woman. Garritsen answered, "No." Trial counsel asked this question because there was a recent case involving Garritsen in Sioux Falls that had "substantial publicity" and was not going to be used for impeachment at this trial. There, Garritsen had been charged with four counts of rape but acquitted on three of those counts. Trial counsel wanted to make clear he was not talking about the Sioux Falls case. He attempted to minimize the effect of Garritsen's prior convictions and the misleading effect of the prior trial's publicity.

Garritsen was not seriously prejudiced in the habitual offender trial because the effect was minor and proof of identity should have been a simple task for the State.

### 4. Use of Invalid Prior Offense when Questioning to Lessen the Effect of Impeachment.

 The burglary conviction Garritsen admitted was later overturned and declared void for failure to comply with *Boykin* requirements. *Garritsen II,* 376 N.W.2d at 578. He claims impeachment with this conviction was a violation of due process, citing *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). " '[A]n attorney must make reasonable investigations or make reasonable decisions to forego particular investigations.' " *Two Eagle v. Leapley,* 522 N.W.2d 765, 770 (S.D.1994) (quoting *Application of Deserly,* 507 N.W.2d 905, 907 (S.D. 1993)). There is no "clear standard to determine how deeply counsel is required to investigate into a defendant's ... prior convictions." *Id.* Trial counsel admitted he knew of many convictions being overturned because of failure to comply with *Boykin.* He went to the Minnehaha County Clerk of Courts and checked regarding the burglary conviction. He did not order a transcript of the proceedings. With knowledge of convictions being overturned for failure to comply with *Boykin,* he should have done so and his performance was deficient in this regard.

However, even Garritsen's brief admitted Garritsen was "probably not prejudiced to the extent ... required by *Strickland.*" We agree. Garritsen's credibility was impeached

court held it inadmissible for enhancement pur-

by two other convictions (the Minnesota aggravated assault and the interstate transportation of stolen property).

### 5. Failure to Object to the Use of a Conviction Not Listed on the Information.

 Prior to the habitual offender trial, trial counsel made and the trial court granted a motion to prohibit any reference to offenses other than those listed on the information. The information listed two prior convictions: burglary and interstate transportation of stolen property. When the court reporter was called to establish identity, he also read testimony regarding the Minnesota aggravated assault conviction. Trial counsel did not object.

Garritsen argues confidence in the outcome of the trial is undermined by introduction of the assault conviction, which was not on the information, and the burglary conviction obtained in violation of *Boykin* requirements. However, Garritsen was not seriously prejudiced by inclusion of this testimony. The assault conviction was not listed on the information and was not used for enhancement. The statute under which Garritsen's sentence was enhanced applies to offenders with one or two prior felony convictions. SDCL 22-7-7. The same sentence results even if there is only one prior offense. *Garritsen III,* 421 N.W.2d at 502; *State v. Fender,* 504 N.W.2d 858, 861–62 (S.D.1993). The federal conviction was sufficient to find Garritsen a habitual offender.

### 6. Failure to Investigate.

 Garritsen claims trial counsel should have interviewed witnesses from a bar and a house where Garritsen, his brother, and the two women stopped on the night of the rapes.

Trial counsel testified that none of the witnesses at the bar or at the house had direct evidence bearing on the crimes. There were only four people at the scene of the crimes that night: Garritsen, his brother and the two women. Their accounts preced-

poses in the habitual offender hearing.

ing the rapes are similar. Any evidence from witnesses at the house or bar would not likely have aided Garritsen in proving his theory of consent.

 This court has held that failure to call witnesses desired by the defendant is not ineffective assistance of counsel where other witnesses testified to the same facts. *State v. Walker,* 287 N.W.2d 705, 707 (S.D.1980). "Unproductive trial strategy does not necessarily indicate incompetent or ineffective counsel[.]" *Id.,* citing *State v. Brown,* 285 N.W.2d 848 (S.D.1979); *State v. Watkins,* 85 S.D. 573, 187 N.W.2d 265 (1971).

 Garritsen also argues trial counsel should have interviewed the examining doctor before trial. Trial counsel did not question the doctor prior to trial but he was allowed access to the State's files. He examined medical records of the doctor's examinations and knew the results. Interviewing the doctor before trial may have produced the same information. The medical records were the basis for the doctor's testimony and the cross-examination. Trial counsel attempted to dilute the doctor's testimony by cross-examination. His trial strategy included using the doctor's physical findings to attempt to show one woman consented to sexual intercourse with Garritsen. In considering a similar issue, the Nebraska Supreme Court stated, "[T]he record discloses that counsel had the necessary information either through copies of statements, police reports, or testimony in other proceedings." *State v. Havlat,* 221 Neb. 845, 381 N.W.2d 144, 148 (1986). *Garritsen* has not shown ineffective assistance of counsel. *See Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**7. Cumulative Effect of Trial Errors.**

 Finally, Garritsen argues the "cumulative effect" of trial counsel's errors resulted in prejudice requiring reversal. We disagree. Trial counsel functioned as counsel, protecting Garritsen's rights with relatively few errors, even when viewed with the clarity of hindsight. Looking at the totality of circumstances of the trial, "[t]he verdict in this case is neither fundamentally unfair nor is it unreliable." *Jenner,* 521 N.W.2d at 432 (citing *Lockhart v. Fretwell,* 506 U.S. 364, ——,

113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993)).

Garritsen failed to establish grounds for granting his application for writ of habeas corpus, and the decision of the trial court is affirmed on the merits.

MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.